UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLYNE DESIR,

    Plaintiff,

v.                                          CASE NO. 8:24-cv-2521-SDM-SPF

EXPERIAN INFORMATION
SOLUTIONS, INC., et al.,

    Defendants.
_____/

**<u>ORDER</u>**

    Experian Information Solutions, Inc. (EIS), moves (Doc. 40) to compel arbitration and moves (Doc. 60) to stay this action pending resolution of EIS's motion to compel arbitration. The plaintiff responds (Docs. 41 and 63) in opposition to EIS's motion to compel arbitration and in opposition to EIS's motion to stay this action. EIS replies (Doc. 44) to the plaintiff's response in opposition to compel arbitration and moves (Doc. 65) for leave to reply to the plaintiff's response in opposition to EIS's motion to stay this action. Also, Trans Union moves (Doc. 61) to stay discovery on the plaintiff's non-arbitrable claims against Trans Union, and the plaintiff responds (Doc. 66) in opposition.

## BACKGROUND

On July 2, 2019, the plaintiff enrolled in CreditWorks, which is a credit monitoring service. (Doc. 40-1 ¶ 3)[1] Enrolling with CreditWorks required the plaintiff to complete two webforms. (Doc. 40-1 at ¶ 3) The first form requires a name, address, phone number, and e-mail address. (Doc. 40-1 ¶ 3) After entering personal information, an enrollee must click a "Submit and Continue" button. (Doc. 40-1 ¶ 3) After clicking the "Submit and Continue" button, an enrollee is presented with a second form that requires additional information, including a social security number, date of birth, username, and password. (Doc. 40-1 ¶ 3) Next appears this disclosure: "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." (Doc. 40-1 ¶ 3) The phrase "Terms of Use Agreement," printed in bold blue text, contains a hyperlink that, if clicked, presents the full text of the agreement. (Doc. 40-1 ¶ 4) Immediately below the disclosure appears a large purple button that states "Submit Secure Order." (Doc. 40-1 ¶ 4 ) The webform, the disclosure, and the "Submit Secure Order" button appear on a single webpage. (Doc. 40-1 ¶ 4 )

EIS asserts that, because the plaintiff successfully enrolled with CreditWorks, the plaintiff must have clicked the "Submit Secure Order" button and, therefore, must have agreed to the "Terms of Use Agreement." (Docs. 40 at 9; 40-1 ¶ 5) The terms of use include an arbitration agreement, which requires the plaintiff to arbitrate

---

[1] EIS's motion (Doc. 40) is supported by the declaration of Dan Smith, the Director of Product Operations for ConsumerInfo.com, Inc. (CIC).

all claims against "ECS" that "relate to" or "arise out of" the plaintiff's membership. (Doc. 40-1 ¶ 6) Both the arbitration agreement and the "Overview and Acceptance of Terms" sections of the contract define "ECS" to include ECS's "affiliates," including "Experian Information Solutions, Inc." (Doc. 40-1 ¶ 5; Doc. 40-1 at 32 and 43) Based on this language, EIS argues that EIS is a party or an intended third-party beneficiary to the contract. (Doc. 40 at 9–10)

Also, at the time the plaintiff enrolled with CreditWorks, each "Terms of Use Agreement" included an "Amendments" section, which advises that "[e]ach time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification to be bound by the then current Agreement." (Doc. 40-1 ¶ 7) EIS alleges that at all relevant times "EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information." (Doc. 40 at 9; Doc. 40-1 ¶ 8) Under the "Terms of Use" provision, "Services" extends to EIS's contributions as a credit-information provider, including EIS's providing "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking including all the data and information contained therein), and the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s)." (Doc. 40 at 10–11; Doc. 40-1 ¶ 8)

## DISCUSSION

### 1. EIS's motion to compel arbitration

"Before referring a dispute to an arbitrator . . . the court determines whether a valid arbitration agreement exists." *Coinbase, Inc., v. Suski*, 602 U.S. 143, 149 (2024). A summary trial must resolve a genuine dispute of material fact as to the formation of the contract. 9 U.S.C. § 4; *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). The Section 4 framework resembles the standard for summary judgment. *Bazemore*, 827 F.3d at 1333. These principles apply to a "clickwrap" agreement, in which a user assents by clicking a button near a disclosure that references certain terms. *Newton v. Experian Info. Sols., Inc.*, No. 24-12398, 2025 WL 2102084, at *1 (11th Cir. July 28, 2025) (citing *Bazemore*, 827 F.3d at 1327, 1333). Whether a clickwrap agreement forms a valid contract depends on state law. *See First Options of Chi., Inc., v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Florida law, the central question is whether the parties mutually assented to the contract. *See, e.g.*, *Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 680–81 (11th Cir. 2018). In the context of a clickwrap agreement, "that inquiry turns on whether the relevant terms were reasonably presented and whether the user took clear, affirmative steps to accept them." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1347 (11th Cir. 2025) (citing *MetroPCS Commc'ns, Inc., v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3rd DCA 2018) (per curiam)). The party asserting the agreement must prove the agreement's existence by the preponderance of the evidence. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

EIS argues that the plaintiff's enrollment with, and continued use of, Creditworks's services binds the plaintiff to a written contract that contains an arbitration clause. Dan Smith's declaration (Doc. 40-1) describes in detail enrollment; attests that the plaintiff enrolled with CreditWorks's services on July 2, 2019; and describes Smith's position with the company, which requires familiarity with enrollment and EIS's business records that document a consumer's account use. Also, Smith attaches the terms of use to which the plaintiff agreed and includes screenshots that depict the webpages the plaintiff encountered during enrollment. Smith's declaration, which attests to specific facts based on personal knowledge, describes enrollment, and appends the operative contract, sufficiently satisfies EIS's initial burden. Cf. 28 U.S.C. § 1746 (permitting unsworn declarations to substitute for affidavits if made under penalty of perjury).

Opposing EIS's motion to compel arbitration, the plaintiff submits a verified response in which the plaintiff contends that she "never signed or otherwise agreed to any arbitration agreement with Defendant, CreditWorks[,]" and that she "never entered into an agreement to arbitrate any claims with [the] Defendant or any Experian related" entities. (Doc. 41 at 2) Also, the plaintiff swears the personal-identifiable information and CreditWorks-membership information identified by Dan Smith does not belong to her; swears that she never enrolled in a CreditWorks membership; and swears that she never provided her personal information to CreditWorks. (Doc. 41 at 2)

- 5 -

The plaintiff's response raises a material dispute as to the existence of a binding arbitration agreement. *Bazemore*, 827 F.3d at 1334 (denying defendant's motion to compel arbitration even though the plaintiff "provided almost no evidentiary support for her contention that she never entered into an arbitration agreement with [defendant] .... [by], for example, submit[ing] an affidavit swearing under oath ...." (alterations added; emphasis added)); *Mitchell v. Precision Motor Cars Inc.*, 2017 WL 1361528, at *3 (M.D. Fla. Apr. 14, 2017) (finding that a genuine issue of material fact existed as to whether the parties entered into a valid arbitration agreement where the plaintiff's "affidavit testimony provide[d] more than conclusory allegations to support her position that the parties never agreed to arbitrate" and where the plaintiff "unequivocally denie[d]" signing the arbitration agreement) (alterations added). Because the plaintiff has put "in issue" the existence of the arbitration agreement, and the Federal Arbitration Act requires the court to "proceed summarily to the trial thereof." 9 U.S.C. § 4.

Under 9 U.S.C. § 4, to preserve a statutory right to a jury trial on the existence of the arbitration agreement, "the party alleged to be in default" — the plaintiff — must have demanded a jury trial of "such issue" "on or before the return day of the notice of application" to submit to arbitration, which is fourteen days after EIS moved to compel arbitration.[2] Although the plaintiff's complaint includes a general

---

[2] Under Local Rule 3.01(c), a party may respond to a motion no later than fourteen after service of the motion. Therefore, the dispositive time within which the plaintiff could invoke her statutory right to a jury trial on this specific "issue" was fourteen days after EIS moved to compel arbitration — on March 21, 2025.

demand for a jury trial, Section 4 requires the "party alleged to be in default" to "make a specific demand for a jury trial on a specific issue related to the 'making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' to preserve its right to a jury trial on the issue." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1349 (11th Cir. 2017) (quoting 9 U.S.C. § 4). Because the plaintiff failed to specifically demand a jury trial on the existence of the arbitration agreement, the plaintiff waived under Section 4 the right to a jury trial.

### 2. Trans Union's motion to stay the plaintiff's non-arbitrable claims

A stay of each arbitrable claim that is subject to a valid arbitration agreement is mandatory, and a stay of each non-arbitrable claim pending the outcome of arbitration is discretionary. *Klay v. All Defendants*, 389 F.3d 1191, 1203–4 (11th Cir. 2004). Although a heavy presumption favors proceeding with non-arbitrable claims when feasible, a stay of non-arbitrable claims is available if the "arbitrable claims predominate" or if "the outcome of the non-arbitrable claims depend upon the arbitrator's decision." *Klay*, 389 F.3d 1191, 1203–4. Other factors include "the expense and inconvenience of parallel litigation, the possibility of inconsistent determinations, and whether the arbitrable and non-arbitrable claims arise out of the same set of facts." *Axa Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp 2d 1330, 1348 (S.D. Fla. 2009) (citation omitted).

The plaintiff's claims against EIS, which may proceed to arbitration depending on the outcome of a summary trial, and the plaintiff's non-arbitrable claims against Trans Union are parallel. Because the plaintiff's claims against both EIS and

Trans Union share underlying facts and legal issues, proceeding concurrently with litigation and arbitration could result in inconsistent determinations.

## CONCLUSION

EIS's motion (Doc. 40) to compel arbitration is **DENIED WITHOUT PREJUDICE**, EIS's motion (Doc. 60) to stay discovery is **GRANTED**, and Trans Union's motion (Doc. 61) to stay discovery of the plaintiff's non-arbitrable claims is **GRANTED**. EIS's motion (Doc. 65) for leave to reply to the plaintiff's response in opposition to staying this action is **DENIED AS MOOT**. Pending a trial on the existence of a binding arbitration agreement, all discovery, except the limited discovery described below, is **STAYED**. If the plaintiff's claims against EIS proceed to arbitration, the plaintiff's non-arbitrable claims against Trans Union will remain stayed pending the resolution of the arbitration between the plaintiff and EIS.

Until **NOVEMBER 24, 2025**, the plaintiff and EIS may conduct limited discovery as to the existence of a binding arbitration agreement, including whether the plaintiff enrolled in, and continued to use, a CreditWorks membership. A **BENCH** trial is set for **DECEMBER 3, 2025**, at **9:00 AM** in Tampa Courtroom 15A before Judge Steven D. Merryday.

ORDERED in Tampa, Florida, on August 27, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE